UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60011-CR-ROSENBAUM/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDRE D. BARBARY, et al.,

    Defendants.

_____

### REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant **Nathaniel Holt, Jr.'s** Motion to Suppress Evidence Under Search Warrant (DE 289), which was referred to United States Magistrate Judge, Lurana S. Snow, for Report and Recommendation. The Defendant seeks to suppress evidence seized from his Opa Locka, Florida residence pursuant to a search warrant issued by United States Magistrate Judge Frank Lynch on December 15, 2011. The motion is fully briefed and oral argument was conducted on July 18, 2012. The motion is ripe for consideration.

### DISCUSSION

The Defendant contends that the Search Warrant Application did not set forth sufficient probable cause to justify the search of his residence. The Affidavit in support of the Search Warrant (Government's Exhibit A, DE 293-1 at 6-35) is accurately summarized in the Government's response to the instant motion, as follows:

> . . . . The affidavit began with a recitation of the affiant's training and experience in drug related investigations. (Gov. Exhibit A, ¶1-3). Therein, the affiant noted (a) he had been a federal agent for approximately two years, (b) prior to becoming a federal agent, he had been a police officer for just under thirteen years, (c) he previously took part in over one hundred narcotics related arrests and over fifty narcotics related search warrants, and (d) he had received training regarding "narcotics trafficking" and investigations of the same. (Gov. Exhibit A, ¶1-3) The affiant also swore to the issuing

Court that he believed evidence of narcotics related offenses would be present at the Defendant's residence.

The affiant then described the initiation of the investigation for the issuing United States Magistrate Judge. (Gov. Exhibit A, ¶4-5). This included outlining the initial investigative information revealing that co-Defendant Andre BARBARY was the manager/leader of a large scale DTO. (Gov. Exhibit A, ¶4-5). The affiant then outlined the investigation chronologically so as to inform the issuing Court of the events that led up to the search warrant request.

The affiant began by describing two separate incidents wherein Defendant HOLT was stopped by law enforcement with "large amounts of unexplained United States currency."(Gov. Exhibit A, ¶6). This included in excess of $75,000 in United States currency, which resulted in positive canine alerts for the presence of a narcotics odor, seized by the Lee County Sheriff's Office. (Gov. Exhibit A, ¶6). The affiant then described the seizure of narcotics and more illicit United States currency from other members of the drug trafficking organization. (Gov. Exhibit A, ¶7-12). The affiant further explained how all this contraband linked to manager/leader co-Defendant BARBARY. (Gov. Exhibit A, ¶8-12)

The affiant then informed the issuing Court of the initiation of a wiretap investigation regarding telephones utilized by co-defendant BARBARY and co-Defendants Robert JACKSON (the Fort Myers cocaine connection – Lee County, Florida) and Monica LEWIS (a cocaine/currency courier). (Gov. Exhibit A, ¶14-27). These paragraphs conclusively displayed the illicit arrangement between BARBARY, JACKSON and LEWIS (and resulted in the seizure of over ½ kilogram of cocaine). (Gov. Exhibit A, ¶14-27).

The affiant then continued, chronologically, to describe co-Defendant Barbary meeting with a "narcotics customer" for an illicit transaction. (Gov. Exhibit A, ¶28-29). This included linking said illicit transaction *to the Defendant and his residence.* (Gov. Exhibit A, ¶30-38). In sum, based upon wiretap intercepts and surveillance, the affiant swore to the Court that the Defendant's residence was being used to "store, distribute, and/or package narcotics for resale." (Gov. Exhibit A, ¶38). The affiant then continued, once again chronologically, to describe co-Defendant BARBARY meeting with a "source of supply for narcotics" wherein the meeting again linked to the Defendant's residence. (Gov. Exhibit A, ¶39-41)

The affiant then informed the issuing Court of extended wiretap authorization into the month leading up to the instant search warrant execution. (Gov. Exhibit A, ¶42). The wiretap authorization led to the interception of relevant communications between co-Defendant BARBARY and a "source of supply for narcotics." (Gov. Exhibit A, ¶43). The affiant explained how this led to a flurry of surveilled activity involving the Defendant and his residence. (Gov.

>Exhibit A, ¶44-49). This included the transfer of a "bag" and "box" amongst locations. (Gov. Exhibit A, ¶49). The affiant then explained that this suspicious activity truly revealed itself when, on the same day, co-Defendants BARBARY and JACKSON were intercepted discussing the transportation of narcotics to co-Defendant JACKSON in the Fort Myers, Florida area. (Gov. Exhibit A, ¶50-51). The affiant then explained that, almost immediately after the aforementioned intercepts (and in the dead of night), Defendant HOLT traveled *from his residence* to make said delivery to co-Defendant JACKSON in Fort Myers, Florida (Gov. Exhibit A, ¶52-61). The affiant then described how Defendant HOLT, back at his residence, met with co-Defendant LEWIS in what appeared to be an evidentiary exchange after the multi-hour round trip from Opa Locka to Fort Myers, Florida in the dead of night. (Gov. Exhibit A, ¶62-67).
>
>The affiant further described suspicious activity involving another residence linked to Defendant HOLT (and co-Defendant BARBARY) as law enforcement prepared to procure a search warrant for the Fort Myers, Florida residence of co-Defendant JACKSON. (Gov. Exhibit A, ¶68-71). Thereafter, the affiant described the execution of said search warrant, all the inculpatory evidence seized, and how it linked directly to the Defendant and co-Defendant BARBARY via wiretap intercept. (Gov. Exhibit A, ¶78-77). In fact, as if the dozens of explanatory paragraphs were not enough, the affiant then summarized the Defendant's participation in this narcotics conspiracy and how his residence was of evidentiary import. (Gov. Exhibit A, ¶78-79).

(DE 293 at 4-7) (Emphasis in original.)

Review of the conduct of the police in obtaining and executing the search warrant for the defendant's residence is controlled by United States v. Leon, 468 U.S. 897 (1984). In creating what has been called a "good faith exception" to the exclusionary rule, the Court recognized that the rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" Id. at 906, quoting United States v. Calandra, 414 U.S. 338, 348 (1974). The Court noted that the articulated purpose of the exclusionary rule never had been to punish the errors of judges and magistrates, and there is no evidence to suggest that judges or magistrates are inclined to ignore or subvert the Fourth Amendment or that "exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." Leon, 468 U.S. at 916. Accordingly, the Court concluded that "suppression of evidence seized pursuant to a warrant

3

should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id. at 918.

The Court noted that in an ordinary case, a police officer cannot be expected to question a magistrate's probable cause determination or judgment that the form of the warrant is technically correct. However, suppression of evidence seized pursuant to a warrant still might be proper in those rare instances where the officer has no reasonable grounds for believing that the warrant was properly issued. Id. at 921-923. Therefore, the Court recognized four situations where a finding of good faith reliance would not be appropriate:

1. Where the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, as discussed in Franks v. Delaware, 438 U.S. 154 (1978);

2. Where the issuing magistrate wholly abandoned his or her judicial role and becomes a "rubber stamp" for the police, as in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);

3. Where the warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, as in Brown v. Illinois, 422 U.S. 590, 610-611 (1975), and

4. Where a warrant is so facially deficient, as where it fails to particularize the place to be searched or the items to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

Although the instant motion makes no reference to Leon, at oral argument counsel for the Defendant stated that he was relying on the third exception, contending that the Affidavit in the instant case was so lacking in probable cause as to render official belief in its existence entirely unreasonable. In Illinois v. Gates, 462 U.S. 213, 238 (1983), the Supreme Court held that the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before hin . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."

The Affidavit submitted in support of the Search Warrant in the instant case, as summarized above, clearly demonstrated a fair probability that evidence of drug trafficking would be found at the Defendant's residence. Therefore, Leon's good faith exception applies, and no evidence seized pursuant to the warrant should be suppressed.

## CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that Defendant **Nathaniel Holt, Jr.'s** Motion to Suppress Evidence Under Search Warrant (DE 289) be DENIED.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with The Honorable Robin S. Rosenbaum, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 6th day of September, 2012.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All Counsel of Record